APPEALS OF GEORGE ANTONOPLOS AND KAST ANTONOPLOS.

Docket Nos. 3925, 4013.    Submitted October 14, 1925.    Decided April 16, 1926.

Value of note received in part payment for shares of stock sold determined.

*Paul E. Hutchinson, Esq.*, for the taxpayers.
*F. O. Graves, Esq.*, for the Commissioner.

Before LITTLETON, SMITH, and TRUSSELL.

These appeals are from determinations of deficiencies in income tax for the year 1920 in the amount of $2,877.57 in the case of each taxpayer. The deficiencies arise from the action of the Commissioner in increasing the profit reported by the taxpayers as having been realized from the sale of certain shares of stock of the Olympic Amusement Co. by a partnership in which the taxpayers each had a one-third interest.

FINDINGS OF FACT.

1. The taxpayers are brothers, and, with another brother, Peter Antonoplos, were during 1920 members of a partnership carrying on business under the name of Antonoplos Brothers. Each of the brothers had a one-third interest in the partnership. Some time prior to April 19, 1920, the partnership acquired 1,800 shares out of a total of 3,600 shares of the Olympic Amusement Co., a Pennsyl-

vania corporation organized in 1919, paying therefor $170,000. The other 1,800 shares had been acquired by John Eichleay Jr. Co. at a cost of $153,000.

2. On March 19, 1920, Antonoplos Brothers gave an option to John Eichleay Jr. Co. to purchase their 1,800 shares of stock in the Olympic Amusement Co. at a price of $225,000, of which amount $10,000 was paid at the time of the signing of the option agreement. The second paragraph of that agreement provided:

2. Vendees to pay to vendor the sum of One Hundred Seventy Five Thousand ($175,000.00) Dollars in cash upon the acceptance of this option and delivery of the stock as herein provided, the down money of Ten Thousand ($10,000) Dollars aforesaid to be applied in part payment thereof, and the balance of Fifty Thousand ($50,000.00) Dollars in four (4) months thereafter, said deferred payment to be secured by the collateral promissory note of vendees with the delivery and pledge of four hundred (400) of said shares of stock to vendor as collateral security, with interest at six per cent, and with the right and privilege, however, to vendees to pay said note and redeem said collateral at any time before maturity, in which case interest shall run only to date of payment of said note.

3. The vendee corporation failed to pay the amount of $165,000 on April 20, 1920, because it was unable to secure the money. The shares of stock were, however, turned over to John Eichleay Jr. Co., which company made payments to Antonoplos Brothers in a net aggregate amount of $65,000 prior to June 24, 1920, which payments were in addition to the original payment of $10,000. On June 24, 1920, Antonoplos Brothers wanted to speculate to the extent of $100,000 in Greek drachmas and on that date attempted to collect from John Eichleay Jr. Co. the balance of $150,000 still owing them. An agreement was then entered into between Peter Antonoplos, representing Antonoplos Brothers, and John Eichleay Jr. Co., which reads as follows:

### THIS AGREEMENT

Made and concluded the *24th* day of *June*, 1920, between *John Eichleay* Jr. Co., a corporation of the State of *Pennsylvania* by its undersigned officers of the City of Pittsburgh, County of Allegheny, State of Pennsylvania, parties of the first part,

### AND

PETER ANTONOPLOS of the same place, party of the second part. WITNESSETH:

That whereas the parties of the first part have borrowed in the name of the said corporation from the party of the second part One Hundred Thousand ($100,000.00) Dollars upon the following terms and conditions, to wit:

That at the date of the above loan the rate of exchange of dollars to drachmas, the unit of currency of the Kingdom of Greece, was $1.00 purchased 9.45 drachmas, and that $100,000.00 could purchase 945,000 drachmas.

The parties of the first part agree and promise to pay to the party of the second part the difference in drachmas between the rate of exchange of the date of the above loan and the rate of the date of any part or whole payment, i. e., the parties of first part agree and promise to pay as many thousand dollars, United States Currency, as will purchase 945,000 drachmas at the date of the payment of any part or of the whole debt.

Payments are to be made as follows_____
_____interest at No %.

And the said parties hereto bind themselves, their heirs, successors or assigns to the true performance of this agreement.

*        *        *        *        *        *        *

On September 10, 1920, the price of Greek drachmas was $10.65 per hundred, at which rate the cost of 945,000 drachmas was $100,-642.50. Under its agreement with Antonoplos Brothers, John Eichleay Jr. Co. was on that date indebted to Antonoplos Brothers to the extent of $642.50 in addition to its unpaid indebtedness on the transaction by which it acquired the 1,800 shares of stock of the Olympic Amusement Co. The vendor partnership then wished to discontinue their speculations in Greek drachmas and again called on the vendee corporation and demanded the balance then due them, which on that date was $125,642.50. John Eichleay Jr. Co. was still unable to make payment in full but agreed to pay $15,000 cash and to give its note without interest for the payment of $140,000 four months from September 10, 1920. A part of the consideration for this note was the cancellation of the contract of September 10, 1920. The face of this note was $29,357.50 in excess of the amount then owed Antonoplos Brothers by John Eichleay Jr. Co. This note was to be secured by collateral consisting of 1,000 shares of 10 per cent cumulative preferred stock of the Olympic Amusement Co. When Antonoplos Brothers sold the 1,800 shares of stock of this company to John Eichleay Jr. Co. only one class of stock was outstanding. Subsequent to March 19, 1920, and prior to September 10, 1920, the capitalization of this company had been changed from 3,600 shares of stock of a single class to 3,000 shares cumulative 10 per cent preferred nonvoting stock and 600 shares voting common stock. The note for $140,000 above referred to was secured by the deposit of two certificates for the aggregate amount of 1,000 shares of the preferred stock above referred to. The by-laws of the Olympic Amusement Co. contained restrictions upon the transfer of the stock. It was provided that any stockholder desiring to sell his stock should first offer it to the other stockholders, and if it was not taken it should not be transferred to any person not acceptable to the board of directors, and in case of a dispute upon this point the issues should be settled by arbitration. The by-laws also provided that each certificate of stock issued by the company should have stamped or printed across its face the following:

The transfer of this certificate of stock is restricted by the by-laws of this company.  Olympic Amusement Company.

The two certificates put up as collateral to secure the note of John Eichleay Jr. Co. for $140,000 had the words above quoted written across their face.  The agreement by which the certificates were put up as collateral provided "As and if payments are made on account of this note, said first parties [John Eichleay Jr. Co.] may lift the collateral thereon as payments are made."

4. Upon the receipt of the note of John Eichleay Jr. Co. secured by collateral, Antonoplos Brothers attempted to have it discounted at the Diamond National Bank in Pittsburgh, Pa., in which Antonoplos Brothers deposited their funds and to which John Eichleay Jr. Co. was known.  The bank refused to make any loan upon the note.  The note provided that the maker could pay all or any part of the note prior to maturity and, during the year 1920, the maker paid $15,000 upon it.  Additional payments were made as follows:

| | |
|---|---:|
| 1921 | $69,000 |
| 1922 | 20,000 |
| 1923 | 3,000 |
| 1924 | 2,000 |

The balance of $31,000, plus interest, was still unpaid at the date of the hearing and John Eichleay Jr. Co. denied liability for such payment.

5. During the fall of the year 1920, a number of sales of preferred stock of the Olympic Amusement Co. were made at par less commission for selling.  In no case were any shares sold at a premium.  The stock was issued subject to being called for payment at any time at $115 per share plus accrued dividends.

6. The accounts of Antonoplos Brothers and those of the taxpayers for the year 1920 were kept on a cash receipts and disbursements basis and their income-tax returns were made upon the same basis.

7. Antonoplos Brothers, in preparing their original partnership return for the year 1920, included an amount of $30,500 as profit upon the sale of the 1,800 shares of stock of the Olympic Amusement Co. to John Eichleay Jr. Co., and the taxpayers reported in their individual returns their pro rata shares of the admitted profit.  The Commissioner, in auditing the partnership return for the year 1920, considered the note for $140,000 as the equivalent of cash and computed a profit upon the sale of the shares of $85,000.

### OPINION.

SMITH: The taxpayers claim the right to report their profits in respect of the sale of 1,800 shares of stock of Olympic Amusement Co. by Antonoplos Brothers in 1920 on an installment basis.  Their

claim is predicated on article 42 of Regulations 45. It is untenable, however, in view of the provisions of sections 212 (d) and 1208 of the Revenue Act of 1926. The former provides:

Sec. 212. * * * (d) Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the total profit realized or to be realized when the payment is completed, bears to the total contract price. In the case (1) of a casual sale or other casual disposition of personal property for a price exceeding $1,000, or (2) of a sale or other disposition of real property, if in either case the initial payments do not exceed one-fourth of the purchase price, the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this subdivision. As used in this subdivision the term "initial payments" means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made. [For retroactive application of this provision see Section 1208.]

Section 1208 provides that section 212 (d) shall be retroactively applied in computing income under the provisions of the Revenue Act of 1916, the Revenue Act of 1917, the Revenue Act of 1918, the Revenue Act of 1921, or the Revenue Act of 1924, or any of such acts as amended. It will be noted, however, that the payments made by the purchasers of the 1,800 shares of stock of Olympic Amusement Co. during the year 1920 were in excess of 25 per cent of the total purchase price. The taxpayers are not entitled to make returns of income in respect of this transaction upon an installment basis.

What was the amount of profit realized by Antonoplos Brothers from the sale of 1,800 shares of stock in the Olympic Amusement Co. to John Eichleay Jr. Co.? The cost of these shares was $170,000. The sales price was $225,000. Up to September 10, 1920, Antonoplos Brothers had received $100,000 cash and on that date they received $15,000 additional cash and a note for $140,000, which note was secured by collateral. The Commissioner has made his determination of a deficiency upon the basis that the note had a cash value of $140,000. We think that it had no such value. Antonoplos Brothers attempted to discount it but could not even obtain a loan upon it. There is some evidence that the collateral was worth par and no more. This would indicate that the collateral behind the note had a value equal to $100,000. On the note $15,000 was paid prior to December 31, 1920. Based upon a value for the note of $100,000 the consideration received by Antonoplos Brothers during 1920 amounted to $215,000. The determination of a deficiency should be made upon the basis that the profit realized by Antonoplos Brothers

during the year 1920, in respect of the sale of the shares of stock, was $45,000.

*Order of redetermination will be entered on 15 days' notice, under Rule 50.*